THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CARLOS R. RIOS *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—94—1653

Opinion filed March 28, 1996.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Richard R. Mottweiler and Catherine D. O'Daniel, both of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

The State appeals a trial court ruling granting defendants' motion to suppress. The State argues that the defendants do not have standing to contest the warrantless entry and search of a basement apartment where the defendants were working as repairmen. We reverse the trial court's ruling that defendants have standing to challenge the warrantless search.

On August 4, 1993, defendants Carlos Rios and Ariel Hurtado allegedly agreed to sell two kilograms of cocaine to an undercover police officer. Hurtado showed Officer Bautista two kilograms of cocaine in a basement apartment at 2503 North Lawndale and agreed to sell the cocaine for $48,000. Officer Bautista left the apartment to get the money. When police returned to the apartment, Rios ran inside and shut the door. The police knocked in the door, entered the apartment, and arrested Rios and Hurtado. The police then searched the apartment and found two kilograms of cocaine in the bedroom, three kilograms of cocaine in the heating and air conditioning unit, and half a gram of cocaine in the refrigerator.

Defendants filed a motion to suppress evidence and argued that their fourth amendment privacy rights were violated when the police entered and searched the apartment without a warrant. The State objected and argued that defendants lacked standing to contest the warrantless search. A hearing was held on the motion to suppress.

Ariel Hurtado testified that he was doing carpentry work in a basement apartment on North Lawndale in Chicago on August 4, 1993, when the police arrested him and Carlos Rios and then searched the apartment. Roberto Macias owned the building. He hired Hurtado and Rios to replace the floor tile and perform carpentry work in the basement apartment. Macias was Hurtado's brother-in-law. Hurtado testified that Delfino Torrez had leased the apartment and was out of town. Hurtado did not know Torrez and did not know whether Torrez would return to the apartment. Rios came to the apartment to help Hurtado every day after he left his day job. Hurtado and Rios had been working in the basement apartment for two weeks before August 4, 1993.

The only furniture in the apartment was a pool table and chairs. Macias gave Hurtado two keys to the apartment. Hurtado stated that he kept his tools—"saws, machines for sanding, and tools for electricity"—in the apartment. He kept no other possessions there. Hurtado testified that Rios kept no possessions in the apartment. He and Rios made and received telephone calls at the apartment. They also ate there. Hurtado spent four nights in the apartment during the two weeks it was under repair. Rios never spent the night.

Roberto Macias testified that he owned the building and hired Hurtado and Rios to repair the floor and wood in the basement apartment. Delfino Torrez leased the apartment and had gone to Mexico two weeks before August 4, 1993. When Torrez left, he gave Macias a rent deposit.

Macias allowed Hurtado and Rios to use the telephone in the apartment. He did not give them permission to spend the night. No one else had access to the apartment. Macias checked to see how the work was coming along once during the two-week period before August 4, 1993. He saw that Hurtado kept his tools in the apartment and Rios and Hurtado had sodas in the refrigerator.

The trial court ruled: "I will hold that the defendants do have sufficient standing to object to the intrusion into the premises. *** [I]t is also clear from the evidence that the defendants had authority to be there through the landlord, who had the obligation, and apparently even of the tenant to do work on the premises, repair the premises." We disagree.

■ To challenge a search and seizure under the fourth amendment defendants must show they have a reasonable expectation of privacy in the place searched. See *Mancusi v. DeForte*, 392 U.S. 364, 368, 20 L. Ed. 2d 1154, 1159, 88 S. Ct. 2120, 2123-24 (1968). To determine whether an expectation of privacy is reasonable, we consider whether defendants were legitimately present in the area searched; their possessory interest in the area or property seized; prior use of the area searched or property seized; ability to exclude others; and a subjective expectation of privacy. *People v. Johnson*, 114 Ill. 2d 170, 191-92, 499 N.E.2d 1355 (1986); *People v. Delgado*, 231 Ill. App. 3d 117, 119, 596 N.E.2d 149 (1992). The question of whether a defendant has a legitimate expectation of privacy to challenge a search must be determined on the total circumstances of each case. *Johnson*, 114 Ill. 2d at 191-92.

■ We accept the uncontradicted evidence that the defendants were legitimately present in the apartment and had been making repairs there for two weeks before the police search. But we find that legitimate presence is only one of two elements of the *Johnson* test the defendants have met.

The evidence of prior use of the worksite—two weeks before the search—and Hurtado's possessory interest in the property seized weigh slightly in defendants' favor. But no one element of the *Johnson* test is dispositive. See *Rawlings v. Kentucky*, 448 U.S. 98, 65 L. Ed. 2d 633, 100 S. Ct. 2556 (1980) (where the Court held that while possession of a seized good is one element to be considered, it is not determinative on the question of whether the defendant has a protectible fourth amendment interest in it).

We disagree with the conclusion that the defendants have a possessory interest in the apartment because they stored tools, made telephone calls, and Hurtado stayed overnight on four occasions. Although Hurtado spent four nights in the apartment, the owner stated that defendants did not have permission to spend the night. We believe that storing required tools at a worksite until the work is completed and making telephone calls is insufficient to vest the defendants with a possessory interest in the worksite.

Nor did defendants have the ability to exclude others. Although the owner gave Hurtado keys, there is no evidence in the record that the owner or the lessee gave the defendants authority to exclude others.

We also believe the defendants do not have a subjective expectation of privacy. "A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable." *People v. Taylor*, 245 Ill. App. 3d 602, 610, 614 N.E.2d 1272 (1993). Courts have recognized the importance of workplace privacy and held that a person may have a legitimate expectation of privacy in an area where he works. See *O'Connor v. Ortega*, 480 U.S. 709, 94 L. Ed. 2d 714, 107 S. Ct. 1492 (1987); *Mancusi*, 392 U.S. 364, 20 L. Ed. 2d 1154, 88 S. Ct. 2120. The Court in *O'Connor* stated: "Given the great variety of work environments in the public sector, the question of whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *O'Connor*, 480 U.S. at 718, 94 L. Ed. 2d at 723, 107 S. Ct. at 1498. We have no quarrel with a case-by-case analysis or those cases that inject a "home away from home" analysis into the discussion. A diary in a locked office desk or the intimate memorabilia many workers surround themselves with at work to warm a cold environment come to mind. But that is not this case. Hurtado and Rios were allowed access to an unoccupied apartment temporarily for one purpose: to repair it. We find no evidence of any merit that would warrant a subjective belief in a reasonable expectation of privacy in the basement apartment.

In light of our holding that Hurtado and Rios do not have standing to contest the apartment search, we reverse and do not address the other issue raised by the State.

Reversed and remanded.

THEIS and O'BRIEN, JJ., concur.