THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LOUIS K. SPARKS, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PATRICIA A. NUNN, Defendant-Appellee.

Fourth District   Nos. 4—99—0561, 4—99—0622 cons.

Argued June 21, 2000.—Opinion filed August 3, 2000.

COOK, P.J., specially concurring.
McCULLOUGH, J., dissenting.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and William L. Browers and Huma A. Zia (argued), Assistant Attorneys General, of counsel), for the People.

Daniel D. Yuhas, Susan M. Wilham (argued), and Jeff Page (argued), all of State Appellate Defender's Office, of Springfield, for appellees.

JUSTICE GARMAN delivered the opinion of the court:
In February 1999, police arrested and a grand jury separately

indicted defendants, Louis Sparks and Patricia Nunn, for cannabis trafficking (720 ILCS 550/5.1(a) (West 1998)), unlawful possession with intent to deliver cannabis (720 ILCS 550/5(g) (West 1998)), conspiracy to commit cannabis trafficking (720 ILCS 5/8—2 (West 1998)), and unlawful possession of more than 100 but less than 400 grams of a controlled substance (720 ILCS 570/402(a)(2)(B) (West 1998)). The grand jury additionally indicted Sparks for unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 1998)) and unlawful possession of less than 15 grams of a controlled substance (720 ILCS 570/402(c) (West 1998)). In both cases, the trial court suppressed evidence seized from Nunn's car by officers attempting to *"Terry* stop" defendants. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). On appeal, we granted the State's motion to consolidate defendants Sparks' and Nunn's cases (Nos. 4—99—0561 and 4—99—0622, respectively). The State now argues that (1) defendant Sparks lacked standing to challenge the constitutionality of the search since he had no protectible privacy interest in the automobile and (2) the trial court erred in suppressing the evidence from Nunn's car because officers conducted a proper *Terry* stop. We affirm.

## I. BACKGROUND

In February 1999, officers from the Springfield police department and Sangamon County sheriff's office set up surveillance along Interstate 55 after a confidential source told police that defendants would be traveling back from Texas with contraband in their car. Officers spotted the car, driven by defendant Nunn, and initiated a *Terry* stop. Two canine units arrived minutes later and, after "sniffing" around Nunn's car, alerted to the trunk. Officers opened the trunk and removed a duffel bag. Both canine units alerted toward the duffel bag, so officers unzipped it and found what they later determined was cannabis.

At defendant Sparks' suppression hearing, Detective Michael Pennington testified that he received information regarding defendants from a confidential informant. The informant told Detective Pennington that defendants would be traveling from Odessa, Texas, carrying contraband. The source gave the defendants' names, their race, and approximate ages; the make, model, color, and license plate number of the car; and the date and approximate time (afternoon) that defendants would be arriving in Springfield. Although confidential, Detective Pennington knew the informant based on unrelated charges pending against the informant. Detective Pennington agreed to "work on" the informant's case in exchange for information regarding defendants.

On February 1, 1999, Detective Pennington and other officers

formed a surveillance team and positioned themselves at various locations along Interstate 55. Around 6:30 p.m., Detective Robert Steil of the Sangamon County sheriff's office, who was not part of the surveillance team, was positioned on Interstate 55 conducting radar checks for speeding. He testified that he clocked Nunn's car traveling 68 miles per hour in a 65-mile-per-hour zone. Detective Steil pulled out behind Nunn's car and began following it. Before he could activate his Mars lights, members of the surveillance team overtook him and initiated a stop of Nunn's vehicle. Then Detective Steil activated his Mars lights and accompanied the surveillance team vehicles as they pulled Nunn's car to the roadside.

Detective Steil testified that surveillance team officers went immediately to Nunn, the driver, and began questioning her, while he talked with the passenger, Sparks, asking him whether "he had any guns, knives, drugs, or anything like that." Sparks denied having any such objects. A few minutes later, Detective Steil told defendant Nunn that he was going to issue her a speeding citation. The pair returned to Detective Steil's patrol car, where he began writing out the citation. During this process, he asked Nunn if she had any illegal drugs in her possession and whether police could search her car. Nunn did not give them permission to search and said they would have to ask defendant Sparks. Detective Steil asked Sparks whether they could search the car. Sparks did not give permission to search, stating "it's not my car."

Sparks testified that Nunn owned the car in which they were traveling. The car was registered in Texas and Sparks explained that they planned to stay in this area visiting family for a few days, then travel to Missouri before returning home to Texas. Sparks said that some of the items in Nunn's car belonged to him, including clothes for the trip. Furthermore, Sparks indicated that, although he was not the registered owner of the car and did not have a driver's license, he had a set of car keys.

About five minutes after officers stopped defendants, two canine units arrived and began "sniffing" the exterior of the car. Detective Pennington testified that he saw the dogs circle the exterior of the car and then "indicate" toward the trunk. He and other officers opened the trunk and discovered two large duffel bags, a milk crate full of various items, and a plastic shopping bag. Detective Pennington watched as the dogs sniffed the various items and "indicated" toward the duffel bags. Officers opened the duffel bags and found what they later determined was cannabis.

In July 1999, by way of memorandum opinion, the court found that defendant Sparks had standing to challenge the search. Further,

the court ruled that the informant's tip failed to establish the informant's basis of knowledge. In particular, the informant gave mostly innocent details regarding defendants, and officers were unable to corroborate the allegation of criminal activity until after defendants were already seized. Accordingly, the trial court ordered the evidence against Sparks suppressed. Since the facts were identical, the trial court adopted the record of Sparks' suppression hearing as the record for Nunn's motion to suppress and likewise suppressed the evidence against her. This appeal followed.

## II. ANALYSIS

■ As an initial matter, we must dispose of defendants' motion to strike certain portions of the State's reply brief. Specifically, defendants complain that, in its reply brief, the State argued for the first time that the *Terry* stop of defendants was valid because Detective Steil ultimately cited Nunn for speeding apart from any stop by the surveillance team. We grant defendants' motion since the State has forfeited this issue. Issues or arguments that a party fails to raise in its initial brief cannot later be raised in a reply brief. *Smith v. Intergovernmental Solid Waste Disposal Ass'n*, 239 Ill. App. 3d 123, 127, 605 N.E.2d 654, 656 (1992). Addressing the substance of an appellant's brief, Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)) declares that "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."

■ Turning to the substantive issues, as a general rule, suppression motions raise mixed questions of law and fact, and the court's ruling thereon will be reversed only if manifestly erroneous. *In re D.G.*, 144 Ill. 2d 404, 408, 581 N.E.2d 648, 649 (1991). However, in this case, where neither party contests the facts or the credibility of witnesses, we will review *de novo* the question of whether reasonable suspicion warranted an investigatory stop. See *D.G.*, 144 Ill. 2d at 408-09, 581 N.E.2d at 649.

### A. Does Sparks Have Standing?

We address first the State's contention that Sparks lacks standing to challenge the search of Nunn's vehicle. The State argues that since Sparks did not own the car or otherwise have a possessory interest in it, he lacked standing to challenge the search made by police. We disagree.

■ Fourth amendment (U.S. Const., amend. IV) protection from unreasonable government intrusion extends to individuals who have a reasonable expectation of privacy in the place searched or property seized. *Rakas v. Illinois*, 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430 (1978). Determining whether a person has a reasonable

expectation of privacy in the area searched or in the items seized can only be resolved in view of the totality of circumstances of the particular case. *People v. Johnson*, 114 Ill. 2d 170, 192, 499 N.E.2d 1355, 1364 (1986). In deciding whether a reasonable expectation of privacy exists, a reviewing court may consider (1) the ownership of property searched or seized; (2) whether the person was legitimately in the area searched; (3) possessory interest in the area or property seized; (4) prior use of the property; (5) the ability to control or exclude others; and (6) one's subjective expectation of privacy. *Johnson*, 114 Ill. 2d at 191-92, 499 N.E.2d at 1364.

In *Johnson*, the court concluded that the defendant did not have a reasonable expectation of privacy in his stepfather's truck. In reaching its decision, the court stressed that the defendant had not driven the truck for six months prior to its seizure, was not present at, or in possession of, the truck when police seized it, did not claim any interest in items seized or establish that he ever stored personal effects in the truck, and failed to prove that he had access rights to the truck at the time police searched it. *Johnson*, 114 Ill. 2d at 192, 499 N.E.2d at 1364-65.

More recently, in *People v. Taylor*, 245 Ill. App. 3d 602, 614 N.E.2d 1272 (1993), the Third District Appellate Court held that the defendant had a reasonable expectation of privacy as the passenger in a car. *Taylor*, 245 Ill. App. 3d at 611, 614 N.E.2d at 1278. There, the defendant was traveling with her friend, in his car, from Illinois to Colorado after visiting family. The court pointed out that the defendant was on a long-distance trip in a car in which she kept some personal effects and luggage. *Taylor*, 245 Ill. App. 3d at 611, 614 N.E.2d at 1278. Furthermore, the car was, in a sense, the defendant's home for the duration of the trip; any of us traveling for an extended period of time in a car, in which we stored our belongings, would expect a certain amount of privacy over the duration of that trip. *Taylor*, 245 Ill. App. 3d at 611, 614 N.E.2d at 1278.

This court faced similar circumstances in *People v. McCoy*, 269 Ill. App. 3d 587, 593, 646 N.E.2d 1361, 1365 (1995), and concluded that the defendant there lacked standing to challenge the search of the car in which he was a passenger. In that case, the passenger defendant failed to establish any possessory interest in the vehicle (even though he allegedly rented the vehicle) or in the items seized because he had no valid driver's license and could not prove that he obtained the car with permission from "kinfolk." *McCoy*, 269 Ill. App. 3d at 592-93, 646 N.E.2d at 1365. However, we expressly acknowledged the *Taylor* decision and noted that this was not a case where the defendant was a passenger in a vehicle, with the owner's permission, for an extended trip. *McCoy*, 269 Ill. App. 3d at 593, 646 N.E.2d at 1365.

■ Turning to the present case, Sparks was a welcome passenger in his girlfriend's car (Nunn) during an extended trip from Texas to Illinois to visit Nunn's family. Sparks testified that he had clothes for the trip stored in the car and possessed a set of car keys. As such, he had the ability to control or exclude others from the car if he chose. Sparks had a sufficient expectation of privacy in the interior of Nunn's car and in his personal belongings therein to challenge the constitutionality of the search.

## B. The Constitutionality of the Stop

■ The origin of the investigatory stop lies with the United States Supreme Court's decision in *Terry*. Determining whether the stop of defendants was an unreasonable seizure under the fourth amendment (U.S. Const., amend. IV) is a twofold process. We must first decide whether the stop of defendant Nunn's car was justified at its inception, and then whether the scope of the stop was proportional to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879.

■ The State contends that police had a reasonable suspicion of criminal activity justifying a *Terry* stop based on the tip provided by the confidential informant. To initiate an investigatory stop, an officer must articulate something more than an inchoate and unparticularized suspicion or hunch. The fourth amendment requires some minimal level of objective justification for making the stop. *Alabama v. White*, 496 U.S. 325, 329-30, 110 L. Ed. 2d 301, 308, 110 S. Ct. 2412, 2416 (1990). An officer's investigatory "good faith" is not enough to warrant the intrusion. *Terry*, 392 U.S. at 22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. The officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. Although this need not amount to probable cause to arrest, the facts must raise a reasonable suspicion that the person being "stopped" has committed or is about to commit a crime. *People v. Smithers*, 83 Ill. 2d 430, 434, 415 N.E.2d 327, 330 (1980).

■ In addition to the traditional *Terry* evaluation, we must consider whether the informant's tip here provided a reasonable suspicion of criminal activity justifying an investigatory stop. In determining whether an informant's statements provide sufficient basis for a *Terry* stop, a reviewing court should consider the informant's veracity, reliability, and basis of knowledge. *White*, 496 U.S. at 329, 110 L. Ed. 2d at 308, 110 S. Ct. at 2415.

Generally, anonymous tips alone cannot demonstrate the infor-

mant's basis of knowledge or veracity, since ordinary citizens frequently do not provide extensive recitations of the basis of their everyday observations and the veracity of persons supplying anonymous tips is largely unknown. *White*, 496 U.S. at 329, 110 L. Ed. 2d at 308, 110 S. Ct. at 2415. However, that does not mean that an informant's tip can never provide the reasonable suspicion necessary for a *Terry* stop. See *Adams v. Williams*, 407 U.S. 143, 147, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1924 (1972) (reasonable suspicion to stop established where a *known informant* indicated that a particular man in a specific nearby automobile was carrying narcotics and had a gun in his waistband). The tip, however, must provide some indicia of reliability; otherwise, the police are forced to conduct additional investigation to verify the information or simply not respond to the tip. *White*, 496 U.S. at 329, 110 L. Ed. 2d at 308, 110 S. Ct. at 2416.

In *White*, an anonymous telephone source told police that a named person would be in possession of cocaine after leaving a particular apartment at a particular time and traveling to a named motel in a specific vehicle. The Court upheld the police's actions in stopping the defendant after they corroborated the caller's tip by watching defendant leave her apartment within the time frame provided by the informant, get into the vehicle described by the informant, and leave directly toward the hotel the informant indicated. *White*, 496 U.S. at 326-27, 110 L. Ed. 2d at 306-07, 110 S. Ct. at 2414-15. However, the Court pointed out that this was a "close case." *White*, 496 U.S. at 332, 110 L. Ed. 2d at 310, 110 S. Ct. at 2417.

■ In this case, the informant told police defendants' names, race, and approximate ages; from where they were traveling; the make, model, color, and license plate of their car; the date they would be traveling to Springfield; and their approximate arrival time. Furthermore, unlike the anonymous informant in *White*, Detective Pennington knew the informant here from another unrelated case. In addition, simply by observation, police corroborated the make, model, color, and license plate of the car prior to initiating the stop, as well as the date and approximate time defendants were traveling through Springfield.

However, defendants cite as supplemental authority the United States Supreme Court's recent decision in *Florida v. J.L.*, 529 U.S. 266, 268, 146 L. Ed. 2d 254, 258-59, 120 S. Ct. 1375, 1377 (2000), where the Court held that an anonymous tip reporting that a man wearing a plaid shirt and standing at a bus stop was carrying a gun, is insufficient, without further indicia of reliability, to justify a *Terry* stop. There, officers received an anonymous phone tip stating that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. The majority pointed out:

"The anonymous call *** provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting [defendant] of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *J.L.*, 529 U.S. at 271, 146 L. Ed. 2d at 260, 120 S. Ct. at 1379.

In addition, even if a reviewing court believes the officer's testimony about the informant, it cannot judge the reliability of the actual informant. If we cannot judge the credibility of the informant, the risk of fabrication becomes unacceptable. *J.L.*, 529 U.S. at 275, 146 L. Ed. 2d at 263, 120 S. Ct. at 1381 (Kennedy, J., specially concurring, joined by Rehnquist, C.J.).

The Court stressed that tips that merely describe a suspect's readily observable appearance do not show knowledge of criminal activity. The reasonable suspicion at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. *J.L.*, 529 U.S. at 272, 146 L. Ed. 2d at 261, 120 S. Ct. at 1379, citing 4 W. LaFave, Search & Seizure § 9.4(h), at 213 (3d ed. 1996) (distinguishing reliability as to identification, which is important in other criminal contexts, from reliability concerning the likelihood of criminal activity).

While acknowledging that *J.L.* dealt with an anonymous informant, not a known informant as in this case, we nonetheless consider *J.L.* controlling in light of the Court's emphasis on the reliability of the informant and the necessity of providing more than "innocent" details of a suspect.

In this case, Detective Pennington knew the informant but had not previously used him as such. Thus, Detective Pennington could not accurately judge the informant's veracity. Furthermore, Detective Pennington knew the informant only because he was facing other unrelated charges and agreed to give information about defendants in exchange for "help" with his own case. Moreover, the substance of the tip failed to adequately establish the informant's veracity or basis of knowledge. *People v. Yarber*, 279 Ill. App. 3d 519, 528, 663 N.E.2d 1131, 1137 (1996). The informant did not indicate that he had witnessed any criminal activity by defendants or that he had participated in previous criminal activity with them, which would have lent some credibility to his story. See *Yarber*, 279 Ill. App. 3d at 528, 663 N.E.2d at 1137. Simply because the information about the drugs turned out to be correct does not mean that it provided officers,

prior to stopping defendants, with a reasonable basis for suspecting them of unlawful conduct. See *J.L.*, 529 U.S. at 270, 146 L. Ed. 2d at 260, 120 S. Ct. at 1379.

Furthermore, although the State asserts that the informant is "known" and can be held accountable for the information that he gave, only the police know the informant's identity. As far as defendants are concerned, the informant is anonymous because defendants were unable to cross-examine or otherwise assess the informant's credibility. Rather than giving defendants this opportunity, the State seeks to limit access to its informant by classifying him or her as "confidential," thus preventing defendants, as well as this court, from assessing the informant's veracity or basis of knowledge.

Substantively, the tip provided no details of criminal activity that police were able to adequately corroborate prior to stopping defendants. The informant provided defendants' names; the make, model, color, and license plate number of Nunn's car; their race; from where they were traveling; and the day and approximate time that they would be coming through Springfield. However, none of that information, even though substantially corroborated, points to any unlawful conduct by defendants. A reasonable and articulable suspicion of criminal activity requires more than corroboration of innocent details. The quality, not the quantity, of corroboration is significant in determining whether officers have a reasonable suspicion to stop someone suspected of criminal activity. *Yarber*, 279 Ill. App. 3d at 529, 663 N.E.2d at 1138. Since we conclude that the tip failed to provide reasonable suspicion to stop defendants, we need not address whether the officers exceeded the scope of a proper *Terry* search.

## III. CONCLUSION

For the foregoing reasons, as to both defendants, we conclude that the trial court correctly found that the stop of defendants violated their fourth amendment rights (U.S. Const., amend. IV) and affirm the trial court's order suppressing the evidence seized during the ensuing search.

Affirmed.

PRESIDING JUSTICE COOK, specially concurring:

The State wants the best of both worlds in this case. It wants to treat the informant here as anonymous and justify the stop as a *Terry* stop. Yet it wants us to recognize the veracity of the informant because the detectives knew the informant from another case.

During oral argument, counsel for defendant Sparks suggested

that, if anything, this was an arrest based on probable cause. I agree. This was not a temporary investigative detention, lasting no longer than necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983). This was not a chance encounter between the police and defendants. The police had specific information on which the stop was based, they were looking for this vehicle, they used four police cars to effectuate the stop, defendants were ordered to exit the car with their hands on their heads, and narcotic sniffing dogs had been requested before the stop was effectuated.

The State may have been able to show probable cause in this case. The confidential source who told police that defendants would be traveling back from Texas with contraband in their car apparently had some basis on which to make that statement. A tip from a known informant may alone demonstrate the informant's basis of knowledge or veracity. When the tip is from a known informant, the reputation of that informant can be assessed, and the informant can be held responsible if her allegations turn out to be fabricated. *J.L.*, 529 U.S. at 270, 146 L. Ed. 2d at 260, 120 S. Ct. at 1378.

Nevertheless, the State does not attempt to justify this search on the basis of probable cause. If the State had attempted to show probable cause, it may have been required to disclose the identity of the confidential informant. A trial court may, in its discretion, require an *in camera* inspection of a confidential informant if, under all the circumstances, the trial court doubts the credibility of the officer-affiant. *People v. Vauzanges*, 158 Ill. 2d 509, 520, 634 N.E.2d 1085, 1090 (1994); *People v. Chaney*, 286 Ill. App. 3d 717, 722, 677 N.E.2d 4, 7 (1997); *People v. Criss*, 294 Ill. App. 3d 276, 280, 689 N.E.2d 645, 648 (1998) (defendant must show more than desire to cross-examine).

The State here seeks to avoid any possibility that it will be forced to disclose its confidential informant. The State chooses not to attempt to show probable cause and chooses instead to characterize this stop as a *Terry* stop, citing *White*.

> "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *White*, 496 U.S. at 330, 110 L. Ed. 2d at 309, 110 S. Ct. at 2416 (involving an anonymous tip).

The State tells us that the "Springfield surveillance team corroborated every aspect of the confidential informant's tip. Thus, there was an ar-

ticulable suspicion for the Springfield surveillance team to initiate a stop."

The State does not have the power to turn a confidential informant into an anonymous tipster by its unilateral decision not to reveal the confidential informant. If there are questions about whether an officer has falsified information, the informant should be called as a witness. It is improper to treat the confidential informant as an anonymous tipster who cannot be called, thereby insulating the officer from impeachment. Both *White* and *J.L.* involved anonymous tipsters, not confidential informants. Even if the information here were "reliable in its assertion of illegality, not just in its tendency to identify a determinate person" (*J.L.*, 529 U.S. at 272, 146 L. Ed. 2d at 261, 120 S. Ct. at 1379), it would not have been sufficient to justify this stop and search.

Finally, I am unable to find any support for Justice McCullough's statement that "[t]he record does suggest the defendants did know the informant." 315 Ill. App. 3d at 798 (McCullough, J., dissenting).

JUSTICE McCULLOUGH, dissenting:

I respectfully dissent both as to standing and the propriety of the search.

The trial judge granted the motion to suppress, finding a failure to show probable cause. The State in its motion for reconsideration requested that the trial court deny the motion to suppress on the basis of *Terry*.

As to the facts, the majority refers to testimony of defendant Sparks and the detective's testimony as to permission to search. The record shows Detective Robert Steil asked defendant whose car it was and defendant Sparks answered that it was not his car, it was his girlfriend's. When Steil asked defendant if he could search the vehicle, defendant responded that it was not his car. The Secretary of State certificate shows Nunn to be the owner of the vehicle. Defendant Sparks also testified that the car was not his.

Concerning any belongings of defendant Sparks in the car, he did not testify that he had clothes in the car. He was asked whether Nunn had clothes in the car and he answered "yes." I suggest that the record does not show that defendant testified that any of the items in Nunn's car belonged to him, nor did he testify he had clothes for the trip. Defendants filed the motion to suppress and had the burden to adduce evidence sufficient to sustain the motion. Since the State questioned defendant Sparks' standing, his burden included adducing sufficient evidence to demonstrate standing. Since our review is *de novo*, defendant's evidence must be sufficient to require such a ruling as a matter of law.

Defendant lacked standing to challenge the search of Nunn's vehicle. A review of *Rakas* and *Johnson* supports a finding of lack of standing. In *McCoy*, this court found that the defendant lacked standing in circumstances more favorable to defendant McCoy than the facts shown here.

Aside from the standing issue, the trial court erred in suppressing the evidence found in Nunn's car.

No issue is raised by the defendants that the detention was unreasonable as to time. The testimony suggests the canine units were available to be used here before the stop. The evidence shows the dogs alerted to the presence of drugs and the trunk was not opened until after the canine alert. The canine search is not a search for fourth amendment purposes. See *United States v. Place*, 462 U.S. 696, 707, 77 L. Ed. 2d 110, 121, 103 S. Ct. 2637, 2644-45 (1983).

The informant's information was detailed and, in my view, more extensive than the information provided in *White*. I agree with the majority wherein it states:

"In this case, the informant told police defendants' names, race, and approximate ages; from where they were traveling; the make, model, color, and license plate of their car; the date they would be traveling to Springfield; and their approximate arrival time. Furthermore, unlike the anonymous informant in *White*, Detective Pennington knew the informant here from another unrelated case. In addition, simply by observation, police corroborated the make, model, color, and license plate of the car prior to initiating the stop, as well as the date and approximate time defendants were traveling through Springfield." 315 Ill. App. 3d at 793.

The record does not show any request by the defendants to reveal the name of the informant. The record does suggest the defendants did know the informant.

The Supreme Court in *White*, 496 U.S. at 330, 110 L. Ed. 2d at 309, 110 S. Ct. at 2416, stated:

"Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."

As the State argues, *White* stressed the importance of the informant's knowledge of the defendant's future actions. Here, the actions of defendants followed the information given by the informant. The information provided was detailed. This information, combined with the corroboration of the identified people arriving in Springfield at the time suggested and the canine alert showing the presence of

drugs, was reliable and a sound basis for the police action. *J.L.* also supports a finding that the search was proper. In *J.L.*, the Supreme Court stated:

> "We speak in today's decision only of cases in which the officer's authority to make the initial stop is at issue. In that context, we hold that an anonymous tip lacking indicia of reliability of the kind contemplated in *Adams* and *White* does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm." *J.L.*, 529 U.S. at 274, 146 L. Ed. 2d at 262, 120 S. Ct. at 1380.

The order of the trial court granting defendants' motion to suppress should be reversed.