THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DEMOND PARKER, Defendant-Appellee.

First District (3rd Division)   No. 1—95—3204

Opinion filed October 23, 1996.

Rita A. Fry, Public Defender, of Chicago (Michael Davidson, Assistant Public Defender, of counsel), for appellee.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GALLAGHER delivered the opinion of the court:

Defendant, Demond Parker, was charged with unlawful use of a weapon. After a hearing, the trial court granted defendant's motion to quash arrest and suppress evidence of the gun. The State appeals, arguing that no search occurred when the gun was discovered. We affirm.

Chicago police officer Daren Washington is part of a unit that conducts random metal detector operations inside Chicago area high schools. The mission of the six police officers and one sergeant is to prevent students from entering schools with weapons.

On April 12, 1995, Officer Washington was inside Bogan High School, where two metal detectors were set up. There were signs posted at the school that stated that any person on the premises was subject to a search. Around 7:20 a.m. defendant, a 16-year-old, entered the school. Defendant looked in the direction where the students were lined up to go through the metal detectors and turned around to leave the school. At that time, Officer Washington stopped the defendant and identified himself as a police officer. He then told the defendant he would have to go through the metal detector, to which defendant responded by raising his shirt and saying "someone put this gun on me." After defendant raised his shirt, Officer Washington could see the handle of a bluesteel semiautomatic pistol. Officer Washington then retrieved the weapon and arrested the defendant.

After a hearing, the trial court granted defendant's motion to quash arrest and suppress evidence. The trial court found that the defendant could have turned around for any number of innocent reasons unrelated to the metal detectors.

On appeal, the State argues that there was no search because defendant did not go through the metal detector and was not patted down. The State argues that because defendant raised his shirt, the gun was in plain view, there was no search, and thus there could not

have been an illegal search. Defendant argues that the stop was illegal. The stop led to the discovery of the gun. Thus, the discovery of the gun was fatally tainted by the unconstitutional stop.

■ "Hostility to seizures based on mere suspicion was a prime motivation for the adoption of the Fourth Amendment." *Dunaway v. New York*, 442 U.S. 200, 213, 60 L. Ed. 2d 824, 836, 99 S. Ct. 2248, 2257 (1979). A person is seized within the meaning of the fourth amendment when, by a show of authority or use of physical force, his freedom of movement is restrained. *United States v. Mendenhall*, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). A seizure occurs "whenever a police officer accosts an individual and restrains his freedom to walk away." *Terry v. Ohio*, 392 U.S. 1, 16, 20 L. Ed. 2d 889, 903, 88 S. Ct. 1868, 1877 (1968); see also *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877; *People v. Long*, 99 Ill. 2d 219, 229, 457 N.E.2d 1252 (1983).

If, however, the person who police officers are talking to remains free to disregard the questions and walk away, there is no intrusion upon that person's liberty or privacy such that the constitution would require some particularized and objective justification. *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.

■ In this case, we conclude that defendant's detention constituted an illegal seizure. Defendant, a 16-year-old, was specifically told by a police officer that he had to walk through the metal detectors even though defendant was leaving the building. The only reason the officer had for stopping defendant was because defendant entered the building, looked in the general area of the metal detectors and turned around to leave. Nothing in the record suggests that defendant was free to walk away if he had wanted to. Indeed, the officer's testimony suggests that defendant would have been physically restrained if he had refused to go through the metal detector. The detention to which defendant was subjected was a more serious intrusion on his personal liberty than is allowable on mere suspicion of criminal activity. See *Florida v. Royer*, 460 U.S. 491, 502, 75 L. Ed. 2d 229, 239, 103 S. Ct. 1319, 1326-27 (1983).

The State argues that the officers were performing an administrative search supported by a legitimate government interest and, thus, the seizure was constitutional. The Supreme Court has upheld suspicionless, administrative searches that were conducted as part of a general regulatory scheme to ensure public safety, not as a criminal investigation to secure evidence of crime. See *Vernonia School District 47J v. Acton*, 515 U.S. 646, 132 L. Ed. 2d 564, 115 S. Ct. 2386 (1995) (drug testing of student athletes); *United States v. Martinez-Fuerte*, 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976)

(automobile checkpoints looking for illegal immigrants and contraband); *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990) (checkpoints to snare drunk drivers).

Exceptions to the requirement of individualized suspicion can be appropriate "where the privacy interests implicated by a search are minimal and 'other safeguards' are available to 'assure that the individual's reasonable expectation of privacy is not "subject to the discretion of the official in the field." ' [Citation.]" *New Jersey v. T.L.O.*, 469 U.S. 325, 342 n.8, 83 L. Ed. 2d 720, 735 n.8, 105 S. Ct. 733, 743 n.8 (1985).

We note that the administrative search cases decided by the Supreme Court did not prohibit a person from choosing not to go through a checkpoint, *i.e.*, from turning around on the road (see *Martinez-Fuerte*, 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074; *Sitz*, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481), or from opting not to participate in the school's athletic program and, thus, not take the drug test (*Vernonia*, 515 U.S. 646, 132 L. Ed. 2d 564, 115 S. Ct. 2386).

In the present case, defendant did not go through the metal detectors, he did not even stand in line to go through the metal detectors. Once he stepped inside the school, defendant, for whatever reason, decided he was not going to stay in the building. While exercising his right to go another way, defendant was stopped by an officer in front of all the other students. Defendant was not merely questioned as to what was going on but, rather, was ordered to go through the metal detector. We find that the officer used his discretion in stopping the defendant and ordering him to go through the metal detector. At that point, defendant was unconstitutionally seized.

The State further argues that defendant, as a public school student, has a diminished expectation of privacy and that seizing defendant was reasonable. The Supreme Court has held that the legality of a search of a student depends on the reasonableness under the circumstances. *T.L.O.*, 469 U.S. at 341, 83 L. Ed. 2d at 734, 105 S. Ct. at 742. To determine reasonableness, the courts look to: first, whether the action was justified at its inception; and, second, whether the search was reasonably related in scope to the circumstances that justified the interference in the first place. *T.L.O.*, 469 U.S. at 341-42, 83 L. Ed. 2d at 734-35, 105 S. Ct. at 742-43. A reasonable suspicion is the "sort of common-sense conclusio[n] about human behavior upon which practical people—including government officials—are entitled to rely," "rather than an inchoate and unparticularized suspicion or hunch." *T.L.O.*, 469 U.S. at 346, 83 L. Ed. 2d at 737, 105 S. Ct. at 745.

The question, then, is whether Officer Washington had a reason-

able suspicion that justified the order to defendant to go through the metal detector. As *T.L.O.* teaches, the action must be "justified at its inception." There must be "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O.*, 469 U.S. at 341-42, 83 L. Ed. 2d at 734-35, 105 S. Ct. at 743.

In *People v. Pruitt*, 278 Ill. App. 3d 194, 210, 662 N.E.2d 540, 550 (1996), the dean of students told defendant Brooks to empty his pockets to "further see just who he was and what, because the actual suspicion was that he had something on him that was suspicious—by his movements." The court in *Pruitt* found that the dean did not have a reasonable suspicion to tell defendant Brooks to empty his pockets. *Pruitt*, 278 Ill. App. 3d at 209, 662 N.E.2d at 550. All the dean had was "an inchoate and unparticularized suspicion or hunch." *Pruitt*, 278 Ill. App. 3d at 211, 662 N.E.2d at 550.

Similarly, in the present case, all the officer had was an inchoate and unparticularized suspicion or hunch. We agree with the trial court, which stated that "the defendant could have, even—if there were no signs, if there was no metal detector, he could have just turned around and gone home for any number of reasons, being sick, forgot something, forgot his lunch, forgot his books, forgot his homework or what have you."

There remains the question of whether the connection between the illegal detention and defendant's admission and showing of the gun was sufficiently attenuated to permit use of that evidence. Evidence obtained as a result of an illegal detention must be suppressed absent significant intervening circumstances that purged the taint of the illegal detention. *Dunaway*, 442 U.S. at 219, 60 L. Ed. 2d at 840, 99 S. Ct. at 2260. To determine whether evidence was obtained by exploiting the illegality, the courts must focus on the causal connection between the illegality and the confession. *Dunaway*, 442 U.S. at 217, 60 L. Ed. 2d at 839, 99 S. Ct. at 2259. Factors to consider are the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62 (1975). Statements given during an illegal detention are inadmissible even though given voluntarily if they are the product of the illegal detention. *Royer*, 460 U.S. at 501, 75 L. Ed. 2d at 238, 103 S. Ct. at 1326.

We conclude that the State has failed to sustain its burden of showing that the evidence was admissible. See *Brown*, 422 U.S. at 604, 45 L. Ed. 2d at 427-28, 95 S. Ct. at 2262. In the case at bar, there was no intervening event between the defendant being illegally

detained and the defendant admitting he had a gun and showing it to the officer. Furthermore, the officer detained the defendant purely as an investigatory expedition "in the hope that something might turn up." See *Brown*, 422 U.S. at 605, 45 L. Ed. 2d at 428, 95 S. Ct. at 2262. Clearly, evidence of the gun must be suppressed.

Accordingly, the trial court's granting of defendant's motion to quash arrest and suppress evidence is affirmed.

Affirmed.

CERDA and GREIMAN, JJ., concur.