NO. 4-01-0706

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

) Moultrie County

BRADLEY R. MONTGOMERY, ) No. 01TR624

Defendant-Appellee. )

) Honorable

) Dan L. Flannell,

) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

The State of Illinois appeals the May 25, 2001, order of the Moultrie County circuit court granting defendant Bradley R. Montgomery's motion to quash arrest and suppress evidence.  Defendant had been charged by information with operating a motor vehicle in violation of gross weight restrictions (625 ILCS 5/15-111(b) (West 2000)).  We affirm.  

I. BACKGROUND

On January 8, 2001, Officer Rick McFarland of the Illinois State Police was on "scale duty" in Moultrie County.  The State Police had set up portable truck scales in the City of Sullivan in Moultrie County, and it was Officer McFarland's mission for the day to drive around looking at any truck he saw and see if he could tell if the truck was overweight.  Officer McFarland stopped trucks that he suspected were overweight and ordered them to drive to the scales in Sullivan to be weighed. 

On this date, Officer McFarland was driving southbound on Route 32 in Moultrie County as part of his scale duty.  He observed an approaching northbound international semitractor trailer truck turn west off of Route 32 onto Findlay Road.  Defendant was driving this truck.  Officer McFarland turned west as well and followed the truck for one-half to three-fourths of a mile before activating his lights and stopping the truck.  The right rear tires on the trailer appeared to be "bulged out a little bit."  It was Officer McFarland's experience from 50 or 60 prior cases that overweight trucks have bulging tires.  This was the only indicator that the truck was overweight which Officer McFarland observed.   Officer McFarland ordered defendant to drive to Sullivan, which was about five miles from where the stop occurred, to be weighed. 

Defendant's truck weighed in at 78,500 pounds, which was 5,220 pounds in excess of the maximum allowed by statute.  625 ILCS 5/15-111(b) (West 2000).  The State subsequently charged defendant with operating a motor vehicle in violation of gross weight restrictions. 

The State later dismissed the charge.  Officer McFarland contacted the prosecutors on his own initiative after learning of this, and the charge was reinstated.   The prosecutors had apparently misapprehended some of the facts in the case, 
i.e.
, defendant's truck was licensed to carry a load of up to 80,000 pounds, and defendant's truck was in compliance with weight limits for Route 32.  However, defendant's truck was overweight for Findlay Road, where it was stopped. 

Defendant filed a motion to quash arrest and suppress evidence, arguing that Officer McFarland did not have sufficient reason to believe defendant's truck was overloaded to justify the stop.  The trial court agreed and granted the motion.  The State appeals. 

II. ANALYSIS

We must first note that defendant has not filed an appellee's brief.  However, the record is simple, and the claimed errors are such that we can decide them without the aid of an appellee's brief.  We therefore reach the merits of the appeal. See 
First Capitol Mortgage Corp. v. Talandis Construction Corp.
, 63 Ill. 2d 128, 131, 345 N.E.2d 493, 495 (1976).

When Officer McFarland stopped defendant and ordered him to drive to Sullivan to be weighed, he was acting pursuant to section 15-112(a) of the Illinois Vehicle Code (Code) (625 ILCS 5/15-112(a) (West 2000)).  Section 15-112(a) states:

"Any police officer having 
reason
 
to

believe
 that the weight of a vehicle and 

load is unlawful shall require the driver 

to stop and submit to a weighing of the same 

either by means of a portable or stationary 

scales ***. If such scales are not available 

at the place where such vehicle is stopped, the 

police officer shall require that such 

vehicle be driven to the nearest available 

scale that has been tested and approved pur-

suant to this [s]ection by the Illinois Depart-

ment of Agriculture."  (Emphasis added.)  625 

ILCS 5/15-112(a) (West 2000).

The determinative issue in this case is whether Officer McFarland had "reason to believe" defendant's truck was overloaded, justifying stopping defendant and ordering him to drive to the nearest available scale to be weighed.  What exactly "reason to believe" means is not defined by the Act.

On appeal, the State argues that the trial court erred when it granted defendant's motion to suppress on the basis that Officer McFarland did not have "probable cause," rather than "reason to believe," thereby equating the stop with an arrest.  The State suggests that a stop pursuant to section 15-112(a) of the Code is actually a 
Terry
 stop, which need only be supported by a "reasonable suspicion" of criminal activity.  
People v. Murray
, 137 Ill. 2d 382, 387, 560 N.E.2d 309, 311 (1990); see 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).  Therefore, the State suggests that the "reason to believe" standard is equivalent to the "reasonable suspicion" standard, and the trial court erred by applying the more onerous "probable cause" standard.  The State further argues that under the "reasonable suspicion" standard Officer McFarland did have reason to believe defendant's truck was overweight because of his experience with 50 or 60 overweight vehicles where all of them had tires that appeared to be deflated. 

No other case we have found has specifically equated the "reason to believe" standard with the "reasonable suspicion" standard of a 
Terry
 stop.  However, we agree with the State on this point and find that a stop made pursuant to section 15-112(a) is equivalent to a 
Terry
 stop.  We therefore also find that an officer having "reason to believe" a vehicle is overweight means the same thing as an officer having "reasonable suspicion" that a vehicle is overweight. 

Our analysis of the nature of a stop made pursuant to section 15-112(a) begins with the three theoretical tiers of police-citizen encounters recognized by the Illinois Supreme Court:  (1) an arrest that requires probable cause, (2) a 
Terry
 stop, which requires reasonable suspicion, and (3) the "community-caretaking" function which involves no coercion or detention and therefore no seizure.  
Murray
, 137 Ill. 2d at 387-88, 560 N.E.2d at 311-12.  There is also a fourth kind of encounter:  "suspicionless, administrative searches that [are] conducted as part of a general regulatory scheme to ensure public safety, not as a criminal investigation to secure evidence of crime."  
People v. Parker
, 284 Ill. App. 3d 860, 862, 672 N.E.2d 813, 816 (1996). 

Looking at the four types of police-citizen encounters, we note that a stop pursuant to section 15-112(a) of the Code is not an arrest or search that requires probable cause.  
People v. Lumpp
, 54 Ill. App. 3d 235, 237, 369 N.E.2d 323, 324 (1977); 
cf
. 
People v. Ruth
, 170 Ill. App. 3d 623, 625, 524 N.E.2d 1254, 1256 (1988) (no distinction between "reason to believe" standard and "reasonable person" standard of probable cause).  A stop pursuant to section 15-112(a) is not a community-caretaking function either because an officer uses a show of authority to detain truck drivers suspected of committing a crime, 
i.e
., being overloaded.   
Murray
, 137 Ill. 2d at 388, 560 N.E.2d at 312 (community-caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute").  Nor can this type of stop be classified as an "administrative search" that does not require any individualized suspicion at all, because the police are looking for evidence of a crime.  
Parker
, 284 Ill. App. 3d at 862, 672 N.E.2d at 816; see also 
People v. Franks
, 72 Ill. App. 3d 940, 942, 391 N.E.2d 574, 575 (1979) (an officer does not need any reason to believe trucks are overweight when every truck of that class is systematically stopped at a roadside check, but a random stop of a particular truck is not authorized without individualized reason to believe that a particular truck is overweight).  Therefore, by process of elimination, a stop made pursuant to section 15-112(a) is equivalent to a 
Terry
 stop. 

We next determine whether the trial court erred in granting defendant's motion to suppress.  We first point out that the trial court did not actually use a "probable cause" standard as the State argues.  The trial court stated that it thought "reason to believe" was a "hybrid" between reasonable suspicion and probable cause.  In any case, we review 
de
 
novo
 whether the facts found by the trial court constituted "reasonable suspicion" supporting a 
Terry
 stop.  
People v. Ross
, 317 Ill. App. 3d 26, 29, 739 N.E.2d 50, 54 (2000).  The trial court's findings of fact will not be reversed unless they are manifestly erroneous.  
People v. Gonzalez
, 184 Ill. 2d 402, 411, 704 N.E.2d 375. 379 (1998).

Defendant's defense in the trial court was based primarily on challenging the credibility of Officer McFarland's testimony that he did in fact observe a slight bulge in the right rear tires.  Defendant produced testimony and exhibits to demonstrate that the tires on his truck and trailer were not underin-flated when he was stopped and that the load the tires were under would not have caused any bulging of the tires.  The trial court did not make any specific factual or credibility determinations.  The trial court implicitly accepted Officer McFarland's testimony as true by ruling that what Officer McFarland testified he observed was not reason to believe defendant's truck was overweight.      

The trial court based it ruling on one legal proposition: "whether or not a police officer who sees one indicator [of a truck being overweight], as he testified that being the case, low tires on one side, is a sufficient indicator to rise to the level of [']reason to believe.[']"  Some examples of recognized indicators that a truck is overweight include a trailer riding lower in the back than the front with tires that appear deflated, but after testing at the scene of the stop the tires are found to be properly inflated (
Lumpp
, 54 Ill. App. 3d at 237, 369 N.E.2d at 324); compressed springs and tires that appear low but are fully inflated (
People v. Johanson
, 28 Ill. App. 3d 82, 85, 328 N.E.2d 331, 333 (1975)); strained engine noise, black smoke coming from the exhaust, and lack of acceleration (
Ruth
, 170 Ill. App. 3d at 625-26, 524 N.E.2d at 1256); and a load that is high up over the sides of the truck (
People v. Lafin
, 59 Ill. App. 2d 489, 492, 208 N.E.2d 105, 106 (1965)).  The trial court ultimately held that, in this case, the single indicator of the slightly bulging tires on one side, without more, was not enough to give Officer McFarland reason to believe the truck was overweight.  We agree.

What the evidence in this case demonstrates is that it is apparently very difficult to determine that a semitractor trailer is overweight just by looking at the tires. We first note that tires that appear deflated have been recognized as giving an officer reason to believe the truck is overweight, but only when combined with other indicators that the truck was overweight and when the officer checked the tires' pressure and found them to be properly inflated.  
Lumpp
, 54 Ill. App. 3d at 237, 369 N.E.2d at 324; 
Johanson
, 28 Ill. App. 3d at 85, 328 N.E.2d at 333.  Officer McFarland did not check the tires' pressure in this case, and there were no other indicators that the truck was overweight.  Also, the tires in this case were radials, and Officer McFarland himself testified that radials will appear to have a slight bulge even if the trailer is empty.   There was testimony from defendant's employer, who had been a truck driver for 24 years, that he had seen a semitractor trailer like the one in this case overloaded to 95,000 pounds and there was no noticeable bulging of the tires.  Finally, defendant introduced into evidence photographs of the trailer's rear tires from a rear and side view under loads from 70,420 pounds to 81,000 pounds.  There was no discernible difference in the tires.

It is also significant that in this case defendant's truck was within its licensed weight capacity of 80,000 pounds.  Defendant's truck was overweight solely by virtue of what road he was on, not because his load was heavy enough to have an effect on his truck, such as overburdening the tires.  Whatever bulge was observed was not caused by an excess load on the tires.  Admittedly, Officer McFarland did not know these facts at the time he made the stop.  However, it is relevant to further point out how little one can determine about a truck's weight by simply looking at the tires without checking whether the tires are properly inflated.

Although Officer McFarland testified that in every case in which he had been involved with overweight trucks the trucks had bulging tires, it does not necessarily follow that every bulging tire means an overweight truck.  This accords with Officer McFarland's testimony that in his experience he usually  noticed bulging tires only after seeing some other indicator that a truck is overweight.  A slightly bulging tire combined with some other indicator of a overweight vehicle would give an officer reason to believe the vehicle is overweight.  Also, if after the initial stop the bulging tires were checked and found to be fully inflated, that is reason to believe the bulge is being caused by an excessive load.  However, slightly bulging tires on one side, without more, is not enough to give an officer reason to believe a truck is overweight. 

III. CONCLUSION

We affirm the May 25, 2001, order of the Moultrie County circuit court granting defendant Bradley R. Montgomery's motion to quash arrest and suppress evidence.

Affirmed.   

McCULLOUGH, P.J., and APPLETON, J., concur.