THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRANDON D. KLINE, Defendant-Appellee.

Third District   No. 3—04—0305

Opinion filed February 16, 2005.

SLATER, P.J., specially concurring.

Marshall E. Douglas, State's Attorney, of Rock Island (Lawrence M. Bauer (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Brian S. Nelson and John Doak (argued), both of Katz, Huntoon & Fieweger, P.C., of Rock Island, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The defendant, Brandon D. Kline, was charged with unlawful possession with intent to deliver cannabis on school grounds. 720 ILCS 550/5.2(d) (West 2002). Kline filed a motion to suppress evidence obtained as a result of an alleged unlawful seizure by a Moline police officer and the dean of Moline High School. Following an evidentiary hearing, the trial court granted Kline's motion to suppress. The People filed this interlocutory appeal.

## FACTS

On September 4, 2003, Kline was charged with unlawful possession with intent to deliver cannabis on school grounds pursuant to section 5.2(d) of the Cannabis Control Act (720 ILCS 550/5.2(d) (West 2002)). On September 25, 2004, Kline filed a motion to suppress evidence on the basis that the evidence obtained was a result of an unlawful seizure by Officer Michael Sottos of the Moline police department and Dean Thomas of Moline High School.

During the evidentiary hearing on Kline's motion, the parties stipulated to the following facts. That on September 2, 2003, at approximately 2:10 p.m., Officer Sottos received a tip from Crime Stoppers regarding alleged cannabis possession at Moline High School. The anonymous tip stated that Kline was in possession of approximately one-half an ounce of cannabis, and he was carrying the cannabis in his left front pants pocket. The tip additionally stated that the cannabis was viewed just prior to the tip's receipt by Crime Stoppers. Officer Sottos relayed this information to Dean Thomas, the dean of students at Moline High School. Both the dean and Officer Sottos proceeded to Kline's classroom and instructed Kline to "come with" them. (The facts do not state whether Officer Sottos was in uniform at this time.) Kline was taken to the closest office, where the dean told Kline the substance of the Crime Stoppers tip. Kline denied having possession of the cannabis and stated, "You can search me."

Following the evidentiary hearing, the court found that a seizure occurred when Kline was retrieved from his classroom by the dean and Officer Sottos and taken to another office. The court further found that the dean required reasonable suspicion in order to remove Kline from his classroom for questioning. Lastly, the court found that the anonymous Crime Stoppers tip, which was uncorroborated by both the dean and Officer Sottos, lacked the requisite indicia of reliability that would provide reasonable suspicion to seize Kline from his classroom. Accordingly, the trial court granted Kline's motion to suppress. The People filed this timely interlocutory appeal.

## ANALYSIS

The sole issue raised on appeal is whether the trial court erred in

granting Kline's motion to suppress. This court will accord great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence; however, we will review *de novo* the trial court's ultimate ruling on a motion to suppress. *People v. Sorenson*, 196 Ill. 2d 425, 431, 752 N.E.2d 1078, 1083 (2001).

The People argue that the trial court's ruling is incorrect for several reasons. First, the People contend that the trial court incorrectly found that Kline was seized when the dean and Officer Sottos removed Kline from his classroom and escorted him to a separate office for questioning. Second, the People allege that the trial court erroneously applied the reasonable suspicion standard when analyzing the legality of the seizure. Lastly, the People argue that even if this court finds that a reasonable suspicion standard applies under these facts, this standard was met based upon the anonymous tip received by Crime Stoppers.

We begin by addressing the People's first argument. The People contend that a school administrator, such as the dean in the instant case, should be able to remove a student from a classroom for questioning regarding an alleged school violation without such a removal constituting a seizure for purposes of the fourth amendment. The People argue that because Kline's removal was primarily carried out by the dean, rather than Officer Sottos, this removal was merely a disciplinary proceeding and not a seizure.

The fundamental purpose of the fourth amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials. *People v. Dilworth*, 169 Ill. 2d 195, 201, 661 N.E.2d 310, 315 (1996). The fourth amendment, through the due process clause of the fourteenth amendment, prohibits unreasonable searches and seizures by state officers. *New Jersey v. T.L.O.*, 469 U.S. 325, 334, 83 L. Ed. 2d 720, 729, 105 S. Ct. 733, 738 (1985); *Dilworth*, 169 Ill. 2d at 201, 661 N.E.2d at 315. The United States Supreme Court in *New Jersey v. T.L.O.*, 469 U.S. 325, 334, 83 L. Ed. 2d 720, 729, 105 S. Ct. 733, 738 (1985), held that the fourth amendment prohibition on unreasonable searches and seizures applies to searches conducted by public school officials. A person is seized within the meaning of the fourth amendment when, by a show of authority or the use of physical force, his or her freedom of movement is restrained. *United States v. Mendenhall*, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980); *People v. Parker*, 284 Ill. App. 3d 860, 862, 672 N.E.2d 813, 815 (1996). A seizure occurs "whenever a police officer accosts an individual and restrains his freedom to walk away." *Terry v. Ohio*, 392 U.S. 1, 16, 20 L. Ed. 2d 889, 903, 88 S. Ct. 1868, 1877 (1968).

In the instant case, the facts readily indicate that Kline was seized within the meaning of the fourth amendment. Both the dean and Officer Sottos entered the classroom where Kline was located and told Kline to come with them. This retrieval displays a clear show of authority by both the dean and Officer Sottos over Kline. Kline was then escorted to a nearby vacant office, where he was further questioned by the dean. During this encounter, Kline's freedom of movement was certainly restrained.

However, the People stress that a different result should follow because Kline's removal from the classroom was primarily carried out by the dean and not Officer Sottos. We first note that it is unclear from the facts adduced at the evidentiary hearing what level of involvement Officer Sottos had. It is not known whether the officer actively participated in Kline's removal, or even if the officer was in uniform at the time. Yet even assuming Officer Sottos played no role in Kline's removal, the fourth amendment's prohibition against unreasonable searches and seizures applies to public school officials even when those officials are acting alone and on their own authority. *T.L.O.*, 469 U.S. at 341 n.7, 83 L. Ed. 2d at 735 n.7, 105 S. Ct. at 743 n.7; *Dilworth*, 169 Ill. 2d at 206, 661 N.E.2d at 316-17. The *T.L.O.* decision did not make the application of the fourth amendment to school officials dependent upon the presence of a police officer. Therefore, even if the dean acted independently when he removed Kline from the classroom, the dean, as a public school official, was still required to conform his actions within the limits of the fourth amendment. Accordingly, the trial court correctly found that the removal of Kline by the dean and Officer Sottos constituted a seizure within the meaning of the fourth amendment.

We now address the People's argument regarding the proper standard to be applied when analyzing the legality of Kline's seizure. The People contend that in *Vernonia School District 47J v. Acton*, 515 U.S. 646, 132 L. Ed. 2d 564, 115 S. Ct. 2386 (1995), the United States Supreme Court loosened the reasonable suspicion requirement for school officials under the fourth amendment. The People argue that the dean of students, like the school officials in *Vernonia*, should be given wider latitude in order to maintain discipline and order in the high school, and his actions should be upheld as one "a reasonable guardian and tutor might undertake." 515 U.S. at 665, 132 L. Ed. 2d at 582, 115 S. Ct. at 2397.

While the Supreme Court's holding in *Vernonia* does provide an expansion of the *T.L.O.* decision, the basic rationale from *T.L.O.* has not been overruled in the process. In *T.L.O.*, the Supreme Court noted that a student has a legitimate expectation of privacy both in his

person and in the personal possessions he carries. *T.L.O.*, 469 U.S. at 336-40, 83 L. Ed. 2d at 731-34, 105 S. Ct. at 740-42. School officials, when carrying out searches and other disciplinary functions in further-ance of school policies, cannot claim a parent's immunity from the restrictions of the fourth amendment. *T.L.O.*, 469 U.S. at 336-37, 83 L. Ed. 2d at 731, 105 S. Ct. at 740. However, because the school has a legitimate need to maintain an environment conducive to learning, the Court recognized that a school setting requires some "easing of the restrictions to which searches by public authorities are ordinarily subject." *T.L.O.*, 469 U.S. at 340, 83 L. Ed. 2d at 733, 105 S. Ct. at 742. Therefore, the Court held that school officials do not need a warrant before searching a student and the legality of such a search is based upon reasonableness, rather than probable cause. *T.L.O.*, 469 U.S. at 341-42, 83 L. Ed. 2d at 733-34, 105 S. Ct. at 742-43.

Subsequently in *Vernonia*, the Court considered whether a high school policy that authorized random urinalysis drug testing of students who participated in school athletic programs was constitu-tional under the fourth and fourteenth amendments. *Vernonia*, 515 U.S. 646, 132 L. Ed. 2d 564, 115 S. Ct. 2386. The Court first considered the nature of the students' privacy interest at issue, noting that public school officials are subject to constitutional constraints. *Vernonia*, 515 U.S. at 654-55, 132 L. Ed. 2d at 575-76, 115 S. Ct. at 2391-92. The Court concluded that student athletes have a particularly lesser expectation of privacy with regard to medical examinations and procedures and compliance with rules of conduct as established for a given sport. *Vernonia*, 515 U.S. at 656-57, 132 L. Ed. 2d at 576-77, 115 S. Ct. at 2392-93. The Court additionally found that the school's inter-est in deterring drug use was important enough to justify the relatively unobtrusive testing, specifying that athletes are more at risk to suffer immediate harm as a result of drug consumption and, further, that athletes as "role models" may influence drug use among the student population. *Vernonia*, 515 U.S. at 661-64, 132 L. Ed. 2d at 579-81, 115 S. Ct. at 2394-96.

In conclusion, the Court held that the school's drug policy was reasonable under the circumstances and therefore constitutional. *Ver-nonia*, 515 U.S. at 664-65, 132 L. Ed. 2d at 582, 115 S. Ct. at 2396. The Court cautioned, however, "against the assumption that suspi-cionless drug testing will readily pass constitutional muster in other contexts." *Vernonia*, 515 U.S. at 665, 132 L. Ed. 2d at 582, 115 S. Ct. at 2396. The Court noted that the most significant element taken into consideration was that the drug testing policy was undertaken in furtherance of the government's responsibilities as guardian and tutor of the children entrusted to its care. *Vernonia*, 515 U.S. at 665, 132 L.

Ed. 2d at 582, 115 S. Ct. at 2397. The Court further stated that "when the government acts as guardian and tutor the relevant question is whether the search is one that a reasonable guardian and tutor might undertake." *Vernonia*, 515 U.S. at 665, 132 L. Ed. 2d at 582, 115 S. Ct. at 2397.

The People's argument in the instant case interprets this last element of the Court's decision, that the drug testing policy was a search "that a reasonable guardian and tutor might undertake," in isolation from the remainder of the *Vernonia* opinion. *Vernonia*, 515 U.S. at 665, 132 L. Ed. 2d at 582, 115 S. Ct. at 2397. First, nothing in *Vernonia* purports to overrule the Court's holding in *T.L.O.* Therefore, the People's contention that the reasonable suspicion standard no longer applies to seizures conducted by school officials is unsupported. Second, the Court made clear that its holding was based upon a specific combination of factors, which included the lesser expectation of privacy of student athletes and the unobtrusiveness of the particular method of drug testing. *Vernonia*, 515 U.S. at 664-65, 132 L. Ed. 2d at 582, 115 S. Ct. at 2396. In the instant case, Kline did not have any lesser expectation of privacy than any other student in his classroom. *Vernonia* offers no justification for the search or seizure of *any* student by a school official, without that official having reasonable suspicion to do so. Rather, *Vernonia* involved particularized testing of a subsection of students, specifically voluntary participants in school athletic programs. Because Kline's seizure is distinguishable from the specific drug testing policy at issue in *Vernonia*, we see no reason to adopt a lesser standard than reasonable suspicion when analyzing the legality of Kline's seizure.

Because we find that the trial court properly applied the reasonable suspicion standard, we now turn to the People's final argument. The People contend that the reasonable suspicion standard was met in this case based upon the anonymous tip received by Crime Stoppers. The People argue that it was unnecessary for the dean or Officer Sottos to corroborate the anonymous tip because any corroboration would have elevated the reasonable suspicion standard to probable cause.

A reasonable suspicion is the sort of commonsense conclusion about human behavior upon which practical people—including government officials—are entitled to rely, rather than an inchoate and unparticularized suspicion or hunch. *T.L.O.*, 469 U.S. at 346, 83 L. Ed. 2d at 737, 105 S. Ct. at 745; *Parker*, 284 Ill. App. 3d at 863, 672 N.E.2d at 817. Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed and its degree of reliability. *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309, 110 S. Ct. 2412, 2416 (1990). Both factors, quality and quantity, are considered

in the totality of the circumstances when evaluating whether there is reasonable suspicion. *White*, 496 U.S. at 330, 110 L. Ed. 2d at 309, 110 S. Ct. at 2416. The requirement of reasonable suspicion is not a requirement of absolute certainty; sufficient probability is the touchstone of reasonableness under the fourth amendment. *T.L.O.*, 469 U.S. at 346, 83 L. Ed. 2d at 737, 105 S. Ct. at 745; *Dilworth*, 169 Ill. 2d at 215, 661 N.E.2d at 320-21.

Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if his or her allegations turn out to be fabricated, " 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' " *Florida v. J.L.*, 529 U.S. 266, 270, 146 L. Ed. 2d 254, 260, 120 S. Ct. 1375, 1378 (2000), quoting *White*, 496 U.S. at 329, 110 L. Ed. 2d at 308, 110 S. Ct. at 2415. However, an anonymous tip, suitably corroborated, may provide reasonable suspicion to justify a seizure, so long as the information exhibits some indicia of reliability. *J.L.*, 529 U.S. at 270, 146 L. Ed. 2d at 260, 120 S. Ct. at 1378, quoting *White*, 496 U.S. at 327, 110 L. Ed. 2d at 306, 110 S. Ct. at 2414. In determining whether the substance of a tip, standing alone, may provide reasonable suspicion, courts will consider the detail of the tip, whether the tip established the informant's basis of knowledge, whether the informant indicated he or she witnessed any criminal activity, and whether the tip accurately predicts future activity of the suspect. See *People v. Yarber*, 279 Ill. App. 3d 519, 529, 663 N.E.2d 1131, 1137 (1996).

In the instant case, the anonymous tip received by Crime Stoppers stated that Kline was in possession of approximately one-half an ounce of cannabis, he was carrying the cannabis in his left front pants pocket, and the cannabis was viewed just prior to giving the tip. Although the informant did indicate that he or she witnessed the criminal activity at issue, he or she provided no other information that exhibits any indicia of reliability. We disagree with the People's contention that the anonymous tipster must have been a student or member of the faculty at Moline High School because the call was received during school hours. On its face, the tip provides no additional specific detail that would readily indicate its veracity to either the dean or Officer Sottos. The general allegation that Kline had cannabis in one of his pockets could have easily been made by anyone. Simply because the information about the drugs turned out to be correct does not mean that it provided the dean and Officer Sottos with a reasonable basis for suspecting Kline of unlawful conduct. See *People v. Sparks*, 315 Ill. App. 3d 786, 794-95, 734 N.E.2d 216, 223 (2000).

The anonymous Crime Stoppers tip further provided no details of criminal activity that either the dean or Officer Sottos was able to cor-

roborate prior to removing Kline from his classroom. See *Sparks*, 315 Ill. App. 3d at 795, 734 N.E.2d at 223. They did not observe any bulge in Kline's front pants pocket, where the tip alleged the cannabis was placed. Additionally, Kline was not acting in any suspicious manner prior to being seized. Rather, Kline was in class, exactly where he was supposed to be at that time of day. Therefore, under these facts, we find that the information in the anonymous tip did not exhibit any sufficient indicia of reliability to give rise to the reasonable suspicion necessary to justify Kline's seizure.

For the foregoing reasons, the trial court's order granting Kline's motion to suppress is affirmed.

Affirmed.

McDADE, J., concurs.

PRESIDING JUSTICE SLATER, specially concurring:
I concur because the seizure in this case was accomplished by a school official *and* a police officer. That officer necessarily required reasonable suspicion to engage in what, in this instance, amounted to a *Terry*-stop type seizure. See *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). I do not agree, however, that the same result would be reached if the school administrator had acted alone. It is clear that, while the fourth amendment applies to school officials, it does not have the same effect in a school context as it does in an ordinary street encounter between police and citizens. See *New Jersey v. T.L.O.*, 469 U.S. 325, 83 L. Ed. 2d 720, 105 S. Ct. 733 (1985). The need to provide a safe and orderly environment conducive to learning means that school officials must be given more leeway in questioning students than would be appropriate in other circumstances. In *T.L.O.* the Supreme Court applied a relaxed "reasonableness" standard to searches by school officials. Significantly, *T.L.O.* was a *search* case which would have required *probable cause* if it had occurred elsewhere, not a *Terry*-stop type seizure case, which requires only reasonable suspicion in *any* context.

My point is that "reasonableness," for purposes of the fourth amendment and *T.L.O.*, must vary according to the intrusiveness of the challenged action. A search of a student's belongings, being fairly intrusive, requires something approaching reasonable suspicion. See *People v. Dilworth*, 169 Ill. 2d 195, 661 N.E.2d 310 (1996) (equating *T.L.O.* "reasonableness" standard with reasonable suspicion). A much less intrusive *Terry*-type seizure, on the other hand, would require significantly less justification. I believe the tip in this case, although

anonymous, was sufficiently detailed to warrant such an investigation by school officials. However, because of the police officer's involvement in this case, reasonable suspicion was required. Based on *Florida v. J.L.*, 529 U.S. 266, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000), I agree that standard was not met. I therefore concur.