# Illinois Official Reports

## Appellate Court

---

**People v. Jones, 2015 IL App (1st) 142997**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KEENAN JONES, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-14-2997 |
| Filed<br>Rehearing denied | December 8, 2015<br>January 5, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-10174; the Hon. Mary Colleen Roberts, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Jon Walters, Assistant State's Attorneys, of counsel), for the People.<br><br>No brief filed for appellee. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Pierce and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1    In a prosecution for possession of a controlled substance with intent to deliver, the trial court granted defendant Keenan Jones's motion to suppress the drug evidence found inside his car after a traffic violation stop. The State appeals, contending the police had probable cause to stop Jones and that they discovered the brick of cocaine in plain view.

¶ 2    Based on the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009), we hold the search of Jones's vehicle was not a valid search incident to arrest. Accordingly, we affirm the trial court's order granting Jones's motion to suppress.

¶ 3                                    BACKGROUND

¶ 4    On May 6, 2012, as Sergeant Jeff Truhlar headed westbound on Fifth Avenue approaching Kostner Avenue, he saw Jones, traveling southbound on Kostner Avenue in a black, four-door Chrysler, make a right turn onto Fifth Avenue without stopping at the red light. Truhlar pulled Jones over and informed him he had committed a traffic violation. Truhlar asked Jones for his driver's license and returned to the police car to check the license's status. After running a name check, Truhlar learned of an active investigative alert for Jones involving a homicide. Truhlar returned to Jones and, with his permission, did a quick protective pat-down, revealing nothing. Truhlar observed nothing unusual in Jones's car.

¶ 5    Truhlar told Jones he was being detained so he could look into the investigative alert. He escorted Jones to the backseat of the police car by holding onto his back belt area. Truhlar's weapon remained holstered and Jones was not handcuffed, but the car doors were closed. Truhlar testified that he has made prior narcotics arrests and sees narcotics packaging on a daily basis but did not see any narcotics in the car because he was focused on Jones.

¶ 6    While Jones was in the police car, Truhlar placed a phone call to verify whether the alert was for probable cause to arrest. Truhlar waited on a response, which came at some point either while he was in the car or, later, at the station.

¶ 7    Officers Baier and Curran arrived and asked Truhlar if he needed assistance. Truhlar informed them he had stopped Jones and was looking into an investigative alert for homicide. He also told them he had not examined or secured Jones's car. The State makes clear that securing a car means looking for guns by walking around the car.

¶ 8    Officer Baier went over to Jones's car after talking with Truhlar. The driver's side door was completely open. Baier looked around the car. He stated that when securing a vehicle, it is standard procedure to initially look inside to determine if there are any weapons. Baier stated that after he looked around inside the car he then looked through the window of the back passenger door, which was closed, and saw a black square object wrapped in cellophane and black tape in the backseat, which appeared to have oil on it. Baier stated the object was in a black bag, but more than half of it stuck outside the bag. Without permission, Baier got into Jones's car and retrieved the object. Based on his training, Baier believed the object to be a kilo of cocaine. He brought it to Truhlar.

¶ 9    Officer Baier recovered the cocaine from Jones's car before Truhlar ascertained the nature of the investigative alert and 5 to 10 minutes after Jones had been placed in the police car.

¶ 10    Truhlar told Jones he was under arrest for possession of suspected cocaine, gave him his *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436 (1966)), and handcuffed him. The police

asked Jones to step out of the car and they conducted a check of his person, uncovering a large bundle of currency in his right front pocket. The officers transported Jones to the station.

¶ 11    Jones was charged with possession of a controlled substance with intent to deliver 900 grams or more of cocaine. He also received a traffic ticket for failure to obey a solid red signal.

¶ 12    At the suppression hearing, Jones argued that once in the back of Truhlar's car, he was not free to leave and that he could not have been placed in the car on the basis of a simple traffic violation. He maintained that the police arrested him without probable cause based on an investigative alert, a situation this court found improper in *People v. Hyland*, 2012 IL App (1st) 110966. The State argues that while Jones was being detained, the discovery of the brick of cocaine, in plain view, provided intervening probable cause for the arrest.

¶ 13    The trial court held that if Jones was not detained or in custody when he was placed in the back of Truhlar's car, then the police had no reason to secure his car. If, however, Jones was detained or arrested due to the investigative alert, *Hyland* applied. The trial court held that just as in *Hyland*, "the State presented no evidence that the underlying facts of the investigative alert established probable cause to arrest the defendant. There was no testimony from the detectives who issued the investigative alert in this case, so the court cannot find that the arrest of the defendant on this investigative alert was proper." The court granted Jones's motion to suppress and denied the State's motion to reconsider.

¶ 14                                                   ANALYSIS

¶ 15    As a preliminary matter, although Jones filed no brief responding to the State's arguments, we may decide this appeal on its merits as the record and claimed errors are straightforward and can be determined without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp*., 63 Ill. 2d 128, 133 (1976). We review the legal arguments raised by the State *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 16    The State contends the trial court should have denied the motion to suppress because the initial detention of Jones's car–where the contraband was recovered–was lawful. The State maintains the discovery of the cocaine was the result of it sitting in plain view in the backseat and not the result of an intrusive search of the car.

¶ 17    The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Generally, the defendant bears the burden of showing the lawfulness of the search and seizure; however, warrantless searches are *per se* unreasonable. *People v. Hyland*, 2012 IL App (1st) 110966, ¶ 22. Accordingly, in challenging a warrantless search, the defendant bears the threshold burden of demonstrating that he or she was doing nothing unusual and then the State bears the burden of establishing a legally justified search. *People v. Liekis*, 2012 IL App (2d) 100774, ¶ 20. The State must show that the information on which the officer relied was based on sufficient facts to reach probable cause. *Hyland*, 2012 IL App (1st) 110966, ¶ 22. Probable cause exists where the facts known at the time of the arrest are sufficient to lead a reasonably cautious person to believe the individual has committed, is committing, or is about to commit a crime. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *People v. Litwhiler*, 2014 IL App (3d) 120431, ¶ 25. As a reviewing court, we give great deference to the trial court's factual findings when ruling on a motion to suppress evidence and will reverse the court's ruling only if the findings are contrary to the manifest

weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). We review the trial court's legal ruling on whether the evidence should be suppressed *de novo. Id*. at 542-43.

¶ 18 The State argues this case involves a lawful traffic stop and a seizure after observing the contraband in plain view. The State analogizes to cases where police use narcotics-detecting canines to sniff vehicles after traffic stops. See *Illinois v. Caballes*, 543 U.S. 405, 406 (2005) (Supreme Court found no intrusion into defendant's expectation of privacy when narcotics-detecting dog alerted officers and marijuana recovered from trunk of defendant's car which had been stopped for speeding). The State contends the trial court erroneously found Jones was placed in custody under the investigative alert. We disagree with the State.

¶ 19 Jones sat inside the police car with the doors closed when the officer removed the cocaine from Jones's car. We agree with the trial court that the police had no reason to secure his car if Jones was not in custody while in the backseat of Truhlar's car, especially given that the traffic stop involved a routine traffic violation. Truhlar asked Jones for his driver's license and then went back to the police car to check the status of the license. After running a name check, Truhlar learned of the investigative alert. Truhlar then conducted a quick protective pat-down, revealing nothing. He also observed nothing unusual in Jones's car. Truhlar then escorted Jones to the backseat of the police car by holding onto his back belt area and told Jones he was being detained so he could look into the investigative alert. Just as the trial court did, we find Jones was taken into custody and his car searched because of the investigative alert. *Hyland* supplies the dispositive rule of law in this case.

¶ 20 In *Hyland*, police took the defendant into custody and performed a search because of an investigative alert that he had violated an order of protection. *Hyland*, 2012 IL App (1st) 110966, ¶ 25. There was no evidence presented from anyone with personal knowledge of the factual basis for the alert. *Id*. The trial court found no probable cause for the arrest. *Id.* ¶ 29. On appeal, we affirmed, holding the stop of the defendant was not investigative as the officers testified to stopping the defendant based on the alert for purposes of making an arrest. *Id.* ¶¶ 30-31 (limited investigative detentions permissible only on a reasonable suspicion based on specific and articulable facts that detained individual committed or is currently or about to commit, a crime (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968))).

¶ 21 The only evidence of a reasonable belief by the officers that Jones committed a crime was the investigative alert. "However, this merely established that other officers might possess facts sufficient to support probable cause to actually arrest defendant; there was no evidence presented that established a basis for an investigative detention." *Id*. ¶ 31.

¶ 22 We note the special concurrence of Justice Salone, joined by Justice Neville, in *Hyland*, regarding the "troubling" issue of the legality of the Chicago police department's policy of issuing investigative alerts. *Id.* ¶ 48 (Salone, J., specially concurring, joined by Neville, J.). "A finding of probable cause is within the sole authority of a neutral and detached judge after review of an affidavit or hearing. There is no guarantee of such a finding. Judges do not always agree on probable cause." *Id*. ¶ 47. This issue remains just as troubling as well as unresolved. Hopefully the issue will be addressed on appeal at some point.

¶ 23 Finally, the State contends that even if the police improperly detained Jones, the brick of cocaine was admissible evidence because it was found in plain view. The plain view doctrine authorizes the police to seize an item without a search warrant when: (1) the police view the object from a place where they are legally entitled to be; (2) the incriminating character of the object is immediately apparent; and (3) the officers have a lawful right of access to the object.

*People v. Jones*, 215 Ill. 2d 261, 271-72 (2005). The State maintains the plain view discovery of the brick of cocaine constituted "intervening probable cause" and was not the fruit of the poisonous tree, *i.e.*, his improper detention, because Officer Baier discovered it on the backseat of the car while Jones was detained for a routine traffic stop. Had Truhlar found the cocaine in plain view at the time he stopped Jones for the traffic violation, we might be inclined to agree. That, however, is not what occurred. Truhlar testified that he never saw the brick of cocaine in the backseat or anywhere else in the car when he took Jones from his car to the squad car. Instead, later, while Jones was being improperly detained on the investigative alert, Baier went to secure the car. If Jones was detained or in custody when he was placed in the back of Truhlar's car, then the police would have reason to secure his car. But, as the trial court found, Jones was not in custody and, thus, Baier had no grounds for securing the car. The discovery stems directly from Jones's improper detention and must be suppressed. *People v. Parker*, 284 Ill. App. 3d 860 (1996) (evidence obtained as result of illegal detention must be suppressed absent significant intervening circumstances that purged taint of illegal detention). Thus, the trial court did not err in granting Jones's motion to suppress.

¶ 24　　　　　Affirmed.