THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AMANDA J. SNYDER, Defendant-Appellant.

Fourth District    No. 4—07—0145

Opinion filed January 13, 2009.

Michael J. Pelletier, Gary R. Peterson, and John M. McCarthy, all of State Appellate Defender's Office, of Springfield, for appellant.

Timothy J. Huyett, State's Attorney, of Lincoln (Norbert J. Goetten,

Robert J. Biderman, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE APPLETON delivered the opinion of the court:

On December 26, 2006, defendant, Amanda J. Snyder, was convicted of unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(e) (West 2004)), unlawful possession of cannabis (720 ILCS 550/4(e) (West 2004)), and unlawful calculated criminal cannabis conspiracy (720 ILCS 550/9(a) (West 2004)). The trial court sentenced her to 36 months' probation and ordered her to pay various fines, fees, and costs. Defendant appeals, alleging the court erred by denying her motion to suppress evidence. She also challenges the court's award of only two days of credit toward her fines, as she claims she was in pretrial custody for three days. We affirm.

## I. BACKGROUND

On October 19, 2005, the State filed a three-count information against defendant charging her with the following: (1) unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(e) (West 2004)) (count I); (2) unlawful possession of cannabis (720 ILCS 550/4(e) (West 2004)) (count II); and (3) unlawful calculated criminal cannabis conspiracy (720 ILCS 550/9(a) (West 2004)) (count III).

On September 27, 2006, defendant filed a motion to suppress evidence. She claimed the police officer that had stopped her vehicle did not have probable cause and/or a reasonable suspicion to believe that a traffic violation had occurred sufficient to justify the stop or sufficient reason to prolong her detention during the course of the stop.

On November 7, 2006, the trial court conducted a hearing on defendant's motion to suppress. Joshua Dean Pharis, a Mt. Pulaski police officer, testified that on October 12, 2005, at approximately 7 p.m., he received a telephone call from a confidential source advising him that two females from Lincoln would be traveling to Decatur to pick up three to four pounds of cannabis. Pharis told the source that the limited information was insufficient to conduct any type of investigation. The source called Pharis back approximately 45 minutes later with a description of the vehicle and license-plate number. He told Pharis that in approximately 20 minutes, the vehicle would be stopping at the Corn Crib tavern in Latham to drop off a male passenger. The male passenger had parked his car in the tavern parking lot. He said the suspect vehicle would then continue southbound on Route 121. The confidential source did not say that he had witnessed any criminal activity nor did he reveal the basis for his information.

Officer Pharis testified that he was outside of his jurisdiction

when he received the telephone calls from the confidential source. He contacted Logan County sheriff deputy Michael Block with the information. At approximately 10 p.m., Pharis arrived at a location "just outside" Latham, approximately one mile from the Corn Crib. He sat in his squad car with "a clear view" of the lighted parking lot. He discovered that the vehicle expected at approximately 8 p.m. had not yet arrived at the Corn Crib. Pharis said he used his binoculars and spotted, in the parking lot, the male passenger's vehicle described by the source. Pharis knew the male passenger and identified his car in the lot. Deputy Block arrived at Pharis's location shortly after Pharis arrived.

At approximately 10:30 p.m., the officers observed the vehicle, a white four-door Chevrolet, pull into the tavern's parking lot. A male passenger got out of the car. Pharis positively identified the male passenger as the person identified by the informant. The suspect vehicle pulled out of the lot and proceeded south on Route 121. Once the vehicle passed the officers, Deputy Block began following it with Officer Pharis behind him. Officer Pharis was unable to see the suspect vehicle. At approximately 10:40 p.m., as Pharis was returning to Mt. Pulaski, Deputy Block called him and informed him that he had stopped the suspect vehicle. Pharis telephoned the Logan County canine officer, Bob Spickard, and proceeded to the traffic stop to assist. While assisting with the stop, Pharis received a telephone call from the confidential source informing him that the quantity of cannabis was expected to be 2½ to 3 pounds. Pharis asked the informant the basis of his knowledge. He told Pharis "he was going to keep that pretty much to himself."

Officer Pharis said that Deputy Block conducted the questioning of the occupants of the vehicle, as he was there only to assist. Pharis said defendant was driving with Haley Kindred as passenger. Deputy Spickard, the canine officer, arrived in approximately 20 minutes.

On cross-examination, Officer Pharis said he had met the confidential source "on countless occasions." This source was responsible for approximately 15 arrests; however, he had provided inaccurate information on five or six occasions. Pharis said that during the informant's third telephone call during the traffic stop, the informant also said there was a scale in the vehicle. A search of the vehicle revealed 2½ pounds of cannabis and a scale.

On redirect examination, Officer Pharis testified that although the source had provided information to effectuate 15 prior arrests, "[t]his was on a much larger scale." This was the first felony arrest with the informant's assistance. Pharis also testified that his second telephone call was most likely between 9:30 and 10 p.m., not 7:45 p.m. Pharis remembered that he received the call as he was coming into Latham.

Defendant next called Deputy Block to testify. He corroborated Officer Pharis's testimony regarding the facts leading up to the observation of the described suspect vehicle. The two officers watched the suspect vehicle pull into the Corn Crib parking lot. They observed the male passenger exit the vehicle. The suspect vehicle pulled out of the parking lot and proceeded south on Route 121. Deputy Block testified that he followed the vehicle. He confirmed the license-plate number, the color and make of the vehicle, and the number of occupants. Block said he "was basically wanting to gain some sort of probable cause to stop the vehicle initially." He followed the vehicle for approximately five miles and then observed the driver fail to properly signal a turn. Block admitted he had made a pretextual stop, as he did not have "enough information" to stop the vehicle without a subsequent violation.

After stopping the vehicle, Deputy Block approached the driver, later identified as defendant. Kindred was the front-seat passenger. Deputy Block testified that the traffic stop was videotaped, and the video was played for the trial court.

The following is a summary of Deputy Block's testimony as defendant's attorney questioned him while the video played in open court. At 10:43 p.m., Deputy Block stopped the vehicle, approached the driver, and went back to his squad car. Officer Pharis arrived and informed Block that the informant had just called to advise that the vehicle contained a scale and $2\frac{1}{2}$ pounds of marijuana. Pharis said he had called the canine officer. Deputy Block again approached the vehicle and spoke with Kindred. She provided her driver's license. At 10:45 p.m., Deputy Block returned to his squad car and began running vehicle information, drivers' license information, and a warrant check on his computer. At 10:56 p.m., Deputy Block and Officer Pharis approached defendant and asked her to step out of the car. The canine officer arrived at 10:57 p.m. Block questioned defendant about her history of drug use. Block asked defendant to get back in the vehicle, roll up the windows, and turn off the engine. At 10:59 p.m., the canine officer approached the vehicle with the dog. The dog alerted by jumping up on the vehicle and scratching it. The officers approached the vehicle and began searching. They found a scale under the front seat and cannabis in the trunk. (Our review of the video confirms that at 22:39 defendant was pulled over. At 22:57, the canine officer arrived. At 22:59, the dog alerted and, at 23:02, defendant was placed in custody while officers searched the vehicle.)

Deputy Block testified that at the time of the traffic stop, he "didn't have probable cause to believe that they had done anything illegal." He said he "did have some reasonable suspicion in the fact

that [defendant]'s eyes were bloodshot and glassy and there was a strong odor of cologne." He said he did not detect the odor of cannabis or alcohol and did not ask defendant if he (Deputy Block) could search the car. The criminal background check on defendant revealed that she had a May 2003 arrest for possession of drug paraphernalia. When he asked her about it, defendant told him that the charge had been dismissed.

On cross-examination, Deputy Block testified that the amount of cannabis that the informant told them to expect in the vehicle initially (three to five pounds) is not typically an amount possessed for personal use. Block said "the whole search was over by 11 [p.m.]"

On November 20, 2006, the trial court denied defendant's motion, finding as follows: Deputy Block had probable cause to stop defendant's vehicle for a traffic offense (failure to signal within 200 feet of an intersection) and he had a sufficient basis to form a reasonable suspicion of criminal activity due to the information provided by the confidential source. The court found this source had provided reliable information in the past, was personally known to Officer Pharis, and had given detailed and specific information about the suspect vehicle, its anticipated plan of travel, its occupants, and its contents. For these reasons, "the factors observed by the officer constituted reasonable suspicion of criminal activity that would justify an investigatory stop in addition to the failure[-]to[-]signal violation." The court found that approximately 20 minutes had elapsed between the initial stop and the canine search. The court noted "that the short delay for the arrival of the [canine] did not exceed the scope of the stop."

On December 26, 2006, the trial court conducted a stipulated bench trial and convicted defendant of the three counts as charged. On January 30, 2007, the parties informed the court that they had a joint recommendation on sentencing as follows: 36 months' probation, $2,500 street-value fine, $500 drug assessment, $100 lab fee, $500 public-defender reimbursement, and 180 days in jail with credit for 2 days of pretrial detention. Entry of the sentencing judgment was to be delayed for two weeks, until February 14, 2007.

On February 2, 2007, defendant filed a motion for a new trial, claiming (1) the trial court erred in denying her motion to suppress evidence, and (2) the evidence was insufficient to convict her beyond a reasonable doubt. On February 20, 2007, the trial court denied defendant's motion. This appeal followed.

## II. ANALYSIS

### A. Motion To Suppress

When reviewing a trial court's ruling on a motion to suppress, we

give deference to the court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence. *People v. Roberson*, 367 Ill. App. 3d 193, 195, 854 N.E.2d 317, 320 (2006). However, we decide, without any deference to the trial court, the ultimate legal question of whether the evidence should be suppressed by applying a *de novo* standard of review. *Roberson*, 367 Ill. App. 3d at 195, 854 N.E.2d at 320.

Defendant does not challenge the officer's justification for the traffic stop. She claims only that the duration exceeded permissible bounds. She argues that the 16 minutes that had elapsed between the time her vehicle was stopped and the time when the canine unit arrived was unreasonably long, was without sufficient justification, and violated her constitutional rights. We disagree.

In *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1879-80 (1968), the United States Supreme Court created a limited exception in the context of brief investigatory police stops to the standard requirement that police seizures be supported by probable cause. According to the standards set forth in *Terry*, a police officer may briefly detain and question individuals to investigate possible criminal behavior if "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" are present. *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. Our Supreme Court of Illinois has explained that to justify a *Terry* stop, the police must point to specific, articulable facts that make the intrusion reasonable. *People v. Ledesma*, 206 Ill. 2d 571, 583, 795 N.E.2d 253, 262 (2003), *overruled on other grounds by People v. Pitman*, 211 Ill. 2d 502, 813 N.E.2d 93 (2004).

The duration of the stop and whether the police acted diligently in pursuing the investigation are important factors for a reviewing court to consider when deciding whether a detention was reasonable. *People v. Staley*, 334 Ill. App. 3d 358, 366, 778 N.E.2d 362, 368 (2002) (the 18-minute traffic stop was reasonable in length and scope). As stated above, the officers had sufficient reasons to stop defendant's vehicle. She had committed a traffic violation and was the subject of an informant's tip. See *People v. Shafer*, 372 Ill. App. 3d 1044, 1049, 868 N.E.2d 359, 362-63 (2007), quoting *People v. Jackson*, 348 Ill. App. 3d 719, 729, 810 N.E.2d 542, 553 (2004) ("An officer may initiate a *Terry* stop based on information provided by a third party if the information is reliable and 'allows an officer to reasonably infer that a person was involved in criminal activity' ").

Citing this court's decision in *People v. Sparks*, 315 Ill. App. 3d 786, 734 N.E.2d 216 (2000), defendant claims the informant's tip was insufficient to justify the length of her detention during the stop. We

find *Sparks* distinguishable. In *Sparks*, the police arrested the two defendants for drug-related offenses after a search of their vehicle uncovered cannabis. Police conducted a *Terry* stop of the vehicle based solely upon a tip from a confidential source that the two defendants would be traveling Interstate 55 south with contraband in the car. The source, a known police informant, gave the police the defendants' names, their races, their ages, a detailed description of the vehicle, and the approximate time they would be traveling through the area. A surveillance team was positioned on the interstate at the expected time, and upon spotting the vehicle, they initiated a stop. The officers asked both of the defendants if they could search the vehicle, but they refused. Canine units arrived within minutes, performed a sniff of the vehicle, and alerted to the trunk of the car, where the drugs were found. *Sparks*, 315 Ill. App. 3d at 788-89, 734 N.E.2d at 218-19.

The trial court suppressed the evidence, finding that the informant's tip failed to establish the basis of his knowledge. The State appealed. In analyzing the constitutionality of the stop, this court, citing *Alabama v. White*, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 308, 110 S. Ct. 2412, 2415 (1990), noted that the informant's veracity, reliability, and basis of knowledge should be considered. *Sparks*, 315 Ill. App. 3d at 792, 734 N.E.2d at 221. Realizing that it is often difficult to ascertain these things from an anonymous tip, the Supreme Court in *White* held that the tip must provide some indicia of reliability. *White*, 496 U.S. at 329, 110 L. Ed. 2d at 308, 110 S. Ct. at 2416; *Sparks*, 315 Ill. App. 3d at 793, 734 N.E.2d at 222. Distinguishing *White* (where the Court held that the anonymous tip *was* sufficiently reliable where the officers corroborated the information contained in the tip before stopping the vehicle) (see *White*, 496 U.S. at 327-28, 110 L. Ed. 2d at 307, 110 S. Ct. at 2414-15), this court held that the informant's tip was insufficient in providing the required level of reliability because the informant provided only "innocent" details of the defendants. *Sparks*, 315 Ill. App. 3d at 794, 734 N.E.2d at 223.

Rather, we found the Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000), controlling. *Sparks*, 315 Ill. App. 3d at 794, 734 N.E.2d at 223. In *J.L.*, the Court held that an anonymous telephone tip reporting that a man wearing a plaid shirt and standing at a bus stop had a gun was insufficient to justify a *Terry* stop. *J.L.*, 529 U.S. at 268, 146 L. Ed. 2d at 258-59, 120 S. Ct. at 1377. The Supreme Court stressed that "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *J.L.*, 529 U.S. at 272, 146 L. Ed. 2d at 261, 120 S. Ct. at 1379. Therefore, in *Sparks*, we found the informant's tip insufficient to justify the *Terry* stop because it

"did not indicate that [the informant] had witnessed any criminal activity by [the] defendants or that he had participated in previous criminal activity with them, which would have lent some credibility to his story. [Citation.] Simply because the information about the drugs turned out to be correct does not mean that it provided officers, prior to stopping [the] defendants, with a reasonable basis for suspecting them of unlawful conduct." *Sparks*, 315 Ill. App. 3d at 794-95, 734 N.E.2d at 223, citing *J.L.*, 529 U.S. at 270, 146 L. Ed. 2d at 260, 120 S. Ct. at 1379.

■ In *Sparks*, the officers relied solely on the "innocent details" provided by the informant, without attempting to corroborate those details in any way. In this case, Officer Pharis and Deputy Block positioned themselves to conduct limited surveillance of the suspect vehicle. They were able to corroborate the facts relayed to them by Pharis's known confidential informant. They verified that defendant's vehicle was traveling in the direction and at the approximate time reported by the source. (Defendant points out that Officer Pharis first testified that during the informant's second call to him, which he guessed was around 7:45 p.m., the vehicle was expected to arrive at the Corn Crib in approximately 20 minutes or, according to Pharis's testimony, at 8:10 p.m. However, the vehicle did not arrive until after 10 p.m. Pharis later testified that the informant's second call could not have been at 7:45 p.m. as he and Block arrived at their observation point minutes before the vehicle's arrival. Pharis testified: "It felt like 45 minutes [(from the first call)]. I don't think it was anywhere near being 7:45.")

The officers watched the vehicle pull into the Corn Crib parking lot, as informed that it would, and dropped off the named male passenger, again as the source said would happen. Officer Pharis had already identified the vehicle in the lot as that belonging to the male passenger. The informant's details were, in fact, verified by the officers' surveillance. This verification provided reasonable suspicion that criminal activity, as reported by the confidential source, was afoot.

In terms of the duration of the stop, the trial court found that "approximately 20 minutes" had elapsed from the beginning of the traffic stop until the canine search. The evidence demonstrated that during this 20-minute period, Block (1) confirmed the status of defendant's and her passenger's driver's license, (2) performed a warrant check on each, (3) questioned defendant about her history of drug use, (4) observed a strong odor of cologne and defendant's glassy eyes—two signs of recent drug use, and (5) received information on defendant's prior drug arrest from his onboard computer. These actions, coupled with the officers' reasonable belief that defendant was

involved in a more serious crime than a routine traffic offense, justified the length and scope of the detention. See *Staley*, 334 Ill. App. 3d at 366-67, 778 N.E.2d at 368-69. We find no error.

## B. Drug-Assessment Fee

■ Defendant next claims that she was entitled to an additional day of $5 credit for the number of days she spent in pretrial custody. Defendant was arrested at 11:12 p.m. on October 12, 2005, and posted bond on October 14, 2005, entitling her to three days of sentencing credit. See *People v. Steskal*, 236 Ill. App. 3d 821, 823, 602 N.E.2d 977, 978-79 (1992) (a defendant is entitled to credit for any part of a day spent in custody). However, the trial court's sentencing judgment reflected credit for only two days. The State claims defendant has forfeited this claim because the two-day credit was part of the sentencing agreement presented to the court. We agree with the State.

This court recently addressed this precise issue in *People v. Williams*, 384 Ill. App. 3d 415, 416-17, 892 N.E.2d 129, 130 (2008). There, in a stipulated bench trial, the defendant was convicted of unlawful possession with intent to deliver cannabis. At the sentencing hearing, the State presented the trial court with an agreed sentence of 24 months' probation and 60 days in jail, " 'with no days['] pre-sentence credit.' " The court accepted the agreement and sentenced the defendant accordingly. *Williams*, 384 Ill. App. 3d at 416, 892 N.E.2d at 130. On appeal, the defendant argued that he should have received credit for at least two days of time served prior to sentencing and a $5-per-day credit against his fines. This court held that the defendant had received the benefits of his bargain. The defendant not only received probation (" 'a very favorable disposition' ") but minimal jail time and a delayed sentencing judgment. *Williams*, 384 Ill. App. 3d at 417, 892 N.E.2d at 131.

Such is the case here. Defendant bargained for her sentence and, according to the record, acquiesced in the sentence imposed. She received probation and was allowed to delay the start of her jail sentence until two weeks after sentencing. Allowing her to agree to a particular sentence, then allow a reduction of that agreed-upon sentence would be unfair. See *Williams*, 384 Ill. App. 3d at 416-17, 892 N.E.2d at 130-31. "A defendant has the right to first request sentencing credit at any time unless, as here, he agreed to forego it as part of a plea or other sentencing agreement." *Williams*, 384 Ill. App. 3d at 417, 892 N.E.2d at 131. We affirm defendant's conviction and sentence.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment. As

part of our judgment, we grant the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

KNECHT and STEIGMANN, JJ., concur.